## RULIFSON et al. v. JOHNSON.

(Circuit Court, N. D. New York.  July 6, 1899.)

PATENTS—INVENTION—BEAN-HARVESTERS.

The Rulifson patent, No. 364,603, for improvements in bean-harvesters, construed, in view of the prior state of the art, and *held* void for want of invention as to claims 1, 3, 4, 7, 8, and 9.

This was a suit in equity by Philetus Rulifson and others against Sylvester P. Johnson for alleged infringement of a patent for improvement in bean-harvesters.

Homer H. Woodward, for complainants.

David N. Salisbury, for defendant.

COXE, District Judge.  This is an infringement suit based upon letters patent, No. 364,603, granted to the complainants June 7, 1887, for improvements in bean-harvesters.  The machine consists of a frame supported upon two wheels and capable of being adjusted up and down to vary the depth at which the shares enter the ground or, if desired, to throw them entirely out of action.  The shares are attached to outwardly curved arms which extend downwardly from the frame.  In front of the shares are vine lifters also attached to the frame and provided with arms to turn the vines inwardly as the machine is drawn along.  The shares are also provided with backwardly projecting rods which assist in throwing the vines towards the center.  The machine is intended to be drawn by animals and to cut two rows of beans; it is said to be simple, cheap and durable and to effect a saving of time and labor in gathering a crop of beans.  The claims alleged to be infringed are the first, third, fourth, seventh, eighth and ninth.  They are as follows:

"1. The combination, with the frame A B, adjustably supported on the wheels C C', of shares D D', connected with the frame by the outwardly curved arms E E', substantially as and for the purposes set forth."

"3. The combination, with the frame A B, adjustably supported on the wheels C C', of shares D D', connected with the frame by the outwardly curved arms E E', and points G G', substantially as and for the purposes set forth."

"4. The combination, with the frame A B, adjustably supported on the wheels C C', of the shares D D', connected with the frame by the outwardly curved arms E E', and provided with the laterally projecting points c c, substantially as and for the purposes set forth."

"7. The combination, with the frame A B, adjustably supported on the wheels C C', of shares D D', connected with the frame by the outwardly curved arms E E', and the points G G', provided with arms b b', substantially as and for the purposes set forth.

"8. In a bean-harvester, the combination of a share or cutter to act on the bean-stalks and a standard to carry said share, curved outward at its lower end, substantially as described, whereby the vines are permitted to pass over the share without lodging against the standard.

"9. In a bean-harvester, in combination with a wheeled frame, a share, D, having the front horizontal edge oblique to the line of travel, a vine-lifter, G, located in front of the forward part of the share, and a gathering-arm, b, extending inward and rearward from the lifter in a line approximately parallel with the edge of the share."

The following diagrams will help to explain the questions in issue:

Fig. 1.

Fig. 2.

Fig. 3.

Fig. 4.

Fig. 5.

The defenses are lack of invention, anticipation, prior use and noninfringement. The application was filed December 26, 1884. In January, 1885, Fred. W. Miller, who had been in the employ of the complainants assisting them in manufacturing harvesters, also filed an application covering similar subject-matter. The issue in the patent office was stated as follows:

"In a bean-harvester, the combination of the frame supported upon wheels of cutting blades or shares, one on each side connected with the frame by outwardly curved arms and vine-lifters, one on each side, provided with gathering rods substantially as and for the purpose set forth."

The examiner considered the two novel features to be the outwardly curved arms and the gathering rods, but as Miller regarded the former a disadvantage the investigation was confined to the latter feature. It was decided that the complainants were the true inventors and that Miller's contributions to the art were made as a mechanic while carrying out their ideas. The file wrapper and contents are not in the record. The defendant has called no witness who has qualified as an expert and the testimony of the complainants' expert is so general that it is of little assistance to the court. Upon the question of infringement, for instance, he is shown a model of the defendant's harvester and says:

"It embraces some of the claims shown in the said° patent namely, the first, third, fourth, seventh, eighth, and ninth claims."

This is all. The court is, therefore, compelled to supply the omissions as best it can and to construe the claims without the help which these records usually contain. It is thought that as between the complainants and Miller the decision of the examiner was correct and there is nothing in the proof to warrant the court in reaching a different conclusion. It was argued at the hearing that one of the most useful features of the patented machine was the mechanism for lowering and raising the frame on both sides, or on one side only, as occasion may require. It seemed to the court that invention might be predicated of this simultaneous or alternate adjustment; but upon an examination it is found that this feature is not covered by any of the claims. The specification states that "the frame is supported on the wheels C C' by means of the pivoted arms J J' with the handles I I' by which the frame may be adjusted up and down. * * * A notched segment, r', is attached to each side of the frame, and a spring catch, e, on the lever I I' engages with the notches, so that the frame may be adjusted and held at any desired distance above the ground." These parts are not mentioned in the claims either by the reference letters or by general description. The broad language of the claims "the combination with the frame A B, adjustably supported on the wheels C C'," cannot be construed to cover the specific devices referred to because bean-harvesters, with adjustable supports, were confessedly old in the art, and, also because, these devices after being specifically described are not claimed. The elements of the first claim are as follows: First. The frame A B adjustably supported on the wheels C C'. Second. The shares D D', connected with the frame by the outwardly curved

arms E E'. Bean-harvesters having an adjustable frame, supported on two wheels, and shares connected with the frame by downwardly extending arms had been in use years before the alleged invention. They are shown in the patent to Bradford, No. 270,381, of January, 1883. The only patentable distinction between the two is the outwardly curved arms, but these, or their equivalents, are found in the machine made by Truman Cooley in 1879. It is doubtful if, in any view, it involved invention to attach the share to a curved arm for the purpose of removing the latter from the line of the row of beans, but if it did, substantially the same character of standard is shown in the Cooley harvester.

The third claim is for a more restricted combination, the vine-lifters G G' being added to the combination of the first claim. Vine-lifters were not new. The patent to Morgan, No. 150,599, dated May 5, 1874, states that "the invention consists in a bean-harvester with an appliance for raising the vines, holding the vines in a raised position, and a device for severing the raised vines." Again the specification says:

"The cheek-pieces G, or gatherers, being supported by the wheels H just above, but close to the surface of the ground, pass under the bean-vines, lift them into a standing position," etc.

The Bradford and Johnson harvesters, both of them antedating the patent, have similar lifting devices attached to the frame ahead of the cutters.

The fourth claim adds to the combination of the first claim an additional element, namely, the laterally projecting points c c attached to the shares. The only notice that the specification takes of this feature is as follows:

"In Fig. 4 we have represented in full lines and in Fig. 2 in dotted lines, a modification in which the share is provided at its point with an outwardly projecting edge or cutting point, c."

Whether or not this point performs any function is left in doubt. If it adds anything to the effectiveness of the machine the character of the addition is not stated. It is doubtful whether it is possible to found invention upon such a slight change in construction even if the reason for the change and its function are pointed out, but it is entirely clear that a patent cannot be upheld founded upon such a meager description. The evidence of infringement of this claim is far from satisfactory. This controversy relates to a single machine purchased of Fred. W. Miller in 1885 and sold by the defendant at auction in the spring of 1892. The defendant testifies that in 1886 he substituted steel shares without the points c c for the cast-iron shares which were on the machine when it was purchased of Miller and that he has not used the points since. It will be remembered that the patent was not issued until June, 1887.

The seventh claim adds the "arms b b'" to the points G G' of the third claim. These arms are intended to turn the vine inward as the machine advances. They were old in the art as early as 1882 and were used on the Orrin Johnson and Bradford machines. In the Bradford patent gathering rods are described which "assist in

gathering the beans and holding them in an upright position as they pass back."

The eighth claim covers the outwardly curved standard for the share and has been sufficiently discussed in considering the combination of the first claim.

The ninth claim is intended to cover the mechanism when used to cut a single row of beans and has been sufficiently considered. Considerable testimony was adduced to prove that the patented harvester was an improvement on the machine which preceded it. A number of intelligent farmers preferred it to the Bradford machine discarding the latter when they became convinced that the former was more successful in operation. The difficulty with this testimony is that it fails to show to what this success was attributable. There is certainly nothing to warrant a finding that it was due to the combinations of the claims in controversy. It may have been due to greater ease of adjustment, to improved construction, to reduced weight, to better materials or to more mature judgment in the relative location of parts. None of these features are covered by the claims and most of them are not patentable subject-matter. The impression produced by the entire record is that the Rulifson machine is the natural evolution of the art. The improvements are such as would suggest themselves to an intelligent farmer after seeing the older machines in operation. It cannot be said that there is a single new feature in the machine unless the mechanism for raising and lowering the frame can be thus considered. The main combinations are all found in the prior art. Some slight changes have been introduced and some unimportant elements added, but they are all within the province of the skilled mechanic and not of the inventor. The situation seems similar to the one considered by this court in Fuller & Johnson Mfg. Co. v. Bender, 69 Fed. 999. If the patentees have contributed anything to the art which produces a new result or a patentable change in the old result the court has been unable to find it in the record. The machine of the patent is the machine of the prior art operating in the old way and producing the old result. The machine is evidently an efficient one and the court approached the consideration of the evidence with the expectation that some of the principal features might be attributed to the inventive skill of the complainants, but, with every inclination to find otherwise, the court is compelled to the conclusion that the evidence will not warrant a decree in favor of the complainants. The bill is dismissed.